This case opens up to the 16th Supreme Court, the Supreme Court of the State of Oklahoma, plaintiff's affidavit. The defendant, Pieri, defendant of felonies. Here among the defendants is the defendant of felonies, Mr. Fletcher. Here among the defendants is the plaintiff's affidavit. Mr. Ironcobble, plaintiff's affidavit. Mr. Hamel. Good morning, Your Honors. My name is Fletcher Hamel, and I represent the defendant, Appalachian Ronald Pieri. May I please report, counsel? Your Honors, there are two issues raised in the briefs in this case. First, whether the defendant was proved guilty beyond a reasonable doubt of the offense of false entries. And second, whether the defendant received effective assistance at counsel. I see these issues as being pretty closely intertwined. And I will focus my comments on the first issue, being reasonable doubt. I will be happy to answer any questions this Court has about the defendant. Perhaps you can focus, in my mind, on the second issue. Because, you know, obviously part of your argument is these documents were error-ridden. They were not a proper foundation. They were flawed. I mean, to base a conviction on. Is that sort of what you're saying? Correct. And then we see that the state's witness is going back and forth, changing some of the earlier record. I mean, going over and recapitulating this in a different way. Wouldn't counsel have an obligation to reveal this stuff before the trial? I mean, shouldn't this have been done? Absolutely. Absolutely. Counsel, that's kind of the crux of that argument. The problem here is these documents get dumped in. About 1,200 pages of firehouse records and about 400 pages of time cards. They get dumped on the Court. Well, when you say dumped on, there was a motion in limine to introduce these records, correct? Defense counsel challenged them, correct? Correct. Do I have to answer? I'm sorry. Yes, go ahead. I know we get in this habit of being very casual, but make a clear record so I can answer. And you say in page 25, page 23 of your brief, and I think you repeat this argument, that you say that the firehouse logs are so unreliable and incomplete to the point that they cannot serve as proof beyond a reasonable doubt of when the defendant did or did not work? Correct. Okay. So all of the records were invalid? Is that what you're saying? Because that would be trial error, and you don't raise trial error in your brief. The records ability to – the problem is not that the records were made. The problem is that the records didn't prove what the State wanted them to prove. And that is – the problem is – here's a good problem. Nobody reads the records, and that's really what this comes down to. Well, that was a defense flaw as well. Yes. The expert retained by the defense did not examine the records because of one single error, which was obviously a typo. Well, correct, and that's the problem. Nobody does, but neither does the State's attorney, and neither does the court. And so the court says when she gives her ruling, I review these records, but then she – all you have to do is look at the first entry in People's Exhibit No. 44, April 30th, 2006. All you have to do is look at it and look at the firehouse record. He's not on April 30th, but he's right there. It's this far away. It's about two inches away, two lines, that he went to class that day. And because it was 6.30 in the morning, it shows up on the April 29th thing. That's all you have to do, and nobody did that. That's the problem in this case, and true. True. Issue two I talked about is counsel. Counsel shouldn't be the only one to do this. You don't look at the evidence after the doors have been closed is your point, correct? She should have looked at the evidence. Absolutely. She should have looked at – this should have happened before trial, and it should have been counsel. But here's – but what counts, though, is that the evidence still is what it is. You know, this isn't a situation where counsel didn't go and investigate a witness, and so the witness didn't get called. This is a case where the evidence came in with all of its flaws and is there and apparent on the face of the exhibits, but counsel didn't mention it, and the state didn't mention it, and none of the witnesses mentioned it, and the judge didn't mention it when she issued her ruling. And, yes, normally you would put that on counsel, but the fact is that still the evidence didn't prove the charges. Well, there was evidence from the defendant's fellow firefighters, correct? Not a single firefighter testified in a single day that the defendant punched in or claimed hours on his time card and did not work. Well, not specifically, but there was testimony, for example, that he was frequently not there on weekends, correct? He never claimed hours on weekends and he didn't work. In fact, if you look at – No, go ahead. There are some – I just wanted – am I correct about that? That is correct, yes. Okay. And there was also testimony that the defendant filled out his own time cards? That's correct. And that was unusual? Well – The other battalion chiefs did not do that? Well, there's two kinds of time cards. There's the handwritten time cards that the firefighters filled out. And then there's the firehouse. And then there's the – well, then there's two kinds of time cards, and then there's the firehouse. There's the handwritten ones that the firefighters were supposed to fill out, and then there's the biweekly spreadsheets that Chief Lovejoy was supposed to fill out. Lovejoy – there's a couple of dates here where there's actually only a spreadsheet by Lovejoy and no time card by the defendant. In fact, if you look at the exhibits, people's 11, you really only have handwritten time cards for about the first year or so. And then they disappear, and all you have is those biweekly spreadsheets. And some of them have the Chief Lovejoy's initials, and some don't. So it's not really clear. But here's the most important thing on this point that you're bringing up. The testimony was that he didn't like to work weekends. If you look at the alleged discrepancies, of the 37 alleged discrepancies, five are on weekends. Of the 20 that survived just rechecking Huber's work, one is on a weekend. So the discrepancy doesn't even line up with the testimony. The testimony – so he's not claiming hours on weekends that he didn't work. And even – so if he doesn't want to work weekends, that's not the issue here. The issue is, did he claim hours that he didn't work? And that's not – the evidence doesn't support that. But I want to get to the most important thing. I really – I mean, there's a lot in this case, obviously. But one aspect of this case stands alone and demands reversal on its own, regardless of how your arms feel about all the other issues that I bring up. And that is that people's exhibits numbers 2, 3, 4, and 5 are incomplete on their face. They – you look at the top of every page of those exhibits, and they say – they label themselves Department of Events, Non-Incident Activities. People's Exhibits 6, 7, 8, and 9 are labeled All Journal Types. Now, why is this important? Because if you look at People's Exhibits 2, 3, 4, and 5, they cover three and a half years. And they're about 625 pages. I think it's 626. People's Exhibits 6, 7, 8, and 9 cover one and a half years, and they have 609 pages in them. Because – and the reason is that there's twice as many entries, firehouse log entries in People's Exhibits per shift in 6 through 9 than there are in 2 through 5. And there's testimony that explains that. The defense called Sandy Sandhall, who testified that when one prints out firehouse logs, one can limit how many – what types of entries come – get printed out. And whoever printed out People's Exhibits 2, 3, and 5 set it to print less – fewer entries than there were. And this can be seen even more directly, actually, because August of – August of 2009 was the last month reported in People's Exhibit number 5, and the first month reported in People's Exhibit number 6. And People's Exhibit number 6 has, I think, 437 entries, and People's Exhibit number 5 has, I think, about 211 or something around there. So it's – again, it's a little more than twice as many entries. So the state's case – now, the whole case is, because they don't have a firefighter to testify, he ever, you know, didn't log – or logged in and didn't work, their whole case is he didn't show up in the firehouse logs. But every single one of their discrepancies, save one that they allege, is in People's Exhibits number 2 and 5. These are – these are firehouse logs that are missing half of their entries. How can anyone – Was that objection raised at trial? No, and it should have been. And that goes to ineffective assistance, correct? Well, it does, but it's still – that's the evidence. Whether you – whether you object to it or not, that's the evidence. And no – you know, can a reasonable trier of fact look at that evidence and say, you know, find beyond a reasonable doubt that the missing half entries, all, you know, 200 of them per month, didn't include the defendant? I mean, that's not rational. No reasonable trier of fact can make that finding, whether a defense counsel points that out or not. Now, sure, yeah, the defense counsel should have pointed that out. But whether or not she does, it's still – that's still the evidence. So you're saying that the convictions – the court acquitted the defendant on the other charges and found the defendant guilty of a false entry count, right? Correct. You're saying that the conviction of the false entry rests on the same infirmity as the other counts. Is that what you're saying? Or what are you saying? Essentially, yes. I mean, the other counts – the other counts you had the additional problem where you were making your own calculations and, you know, making your own assumptions about benefit time, in which, you know, this is a more straightforward count than the other ones. Her testimony was that if there was any variance or assumptions to be made, she gave the benefit of the doubt to the defendant. That was her testimony, right? But that's with respect to the benefit time. Right. But this counts are more straightforward. This is just, you know, did he claim hours? Did he work? Did he make one or more false entries? With the intent to defraud. That's the essence of a false entry. Well, on the first question, did he make one or more false entries? Probably not. We don't know, but probably not. We can take their own evidence, take the firehouse logs that we have, and can narrow it down all the way down to – it's actually 16 based on the firehouse logs that they have. And if you take evidence from the pre-sentence investigation report – and this is a real important point. This is June 5th of 2008 to June 8th of 2008. You look at the evidence that was presented at trial, there's no explanation given. He claimed hours. He's not in the firehouse. There's no explanation in the trial record. But if you look at the pre-sentence investigation report, he attended a 40-hour class that week. No mention of that anywhere in the firehouse logs. And this is why you can't trust them. And even if – granted, the judge didn't have access to that at trial, but you have it now. And you – Well, we're not here to re-weigh the evidence. We're here to determine whether or not a reasonable juror or fact finder could find the defendant guilty without a reasonable doubt and in the light most favorable to the State, correct? Correct. But to do that, you would have to view – in favor of the State. You have to make up evidence in favor of the State. You have to take these, you know, half of the firehouse entries and you have to assume that they would not show the defendant working on these days. Well, let me ask you a point of question. Even if we were to find the evidence ostensibly established guilt to the reasonable rational trier of fact, that would not preclude us finding there was an effective assistance of counsel, would it? It would not. But on your way, you're going to find fatal – you have to – on your way to finding fatal flaws in the State's evidence that counsel didn't bring up, there's still fatal flaws in the State's evidence. So there's – I mean, there's just not a lot of point, you know, if you don't find that these flaws are fatal. But they are. And I'm talking about – What kind of business records are these? Well, they're logs that are created, I think, primarily to survive an audit. The testimony was that these logs were created to show that there were four firefighters on duty at any given time. Because obviously in a fire station, that's a big deal. So that's the point. And they mostly do that, although there's seven dates here where the logs do not show four firefighters on duty. You know, there's holes in logs. And these have to be dates where the State claims the defendant claimed hours and didn't work, even though his hours – Was there a stipulation to the admission of the firehouse application, or was there a foundation laid to establish that it was taken in the ordinary course of business and accurate and reliable? There was testimony to that. There was. But it was accurate and reliable for its purpose. And its purpose was to keep track of who's on duty. And activities as well, correct? Well, yes, activities. But at the same time, it's still not payroll software. And that's a crucial difference. Because just a real quick example, June 17, 2006, the defendant claimed two hours on his time card. He doesn't show up in the firehouse. The State says that's a discrepancy. But you look at firehouse, there's a two-hour public education event that day. No firefighters listen next to it. That's the kind of thing, when it's not payroll software, that's the kind of thing that happens. Because if you're not thinking about payroll, you're not worried about who exactly gets entered in there to make that record. And to Justice Hudson's point, you're pointing out a lot of things that should have been pointed out at trial. True. But, again, these are things that are in the evidence. Even if the defense counsel didn't point it out, a reasonable trial fact should have discovered it. And I see that I'm out of time. So if I would ask that Your Honor's reverse defense conviction outright or for the reasons in my brief to reverse it and ask for a new trial. Thank you. Thank you, sir. Good morning, Your Honors. Counsel. Good morning. My name is Ivan Oliver Taylor, Jr. I represent the State in this matter. The State contends that the defendant was properly convicted of false entries and that the defendant has failed in his burden to show that the evidence was insufficient to before that conviction. The trial court acquitted the defendant of the official misconduct and theft charges without explanation. That's right. But can we infer from her acquittals that she had serious problems with the State's evidence? From the acquittals, you can infer that the trial court took the time to examine all the evidence and determined that the State can only prove that the defendant was guilty of false entries. Why the difference? It's not so much the difference. It's just much a more elaborate explanation. It's just that the defendant indicated that no one looked at any of the evidence, but that can't be correct. What about the fact that counsel just pointed out there's obviously missing records? There were more records here that should have been introduced. The State basically cherry-picked the records to fashion a model. For the discrepancy between printing out a report that had every entry, as opposed to just having just the listed entries there, it's not the State necessarily cherry-picking. It just focused on the State just produced the evidence that was necessary for this particular case. There's no point in having additional records that are not going to show, that have no actual purpose to them in any respect. Well, the trial judge didn't go into one explanation based on the record, and found the defendant not guilty of the other counts based on infirmity in the evidence presented. Wouldn't the count of false entries suffer from the same infirmity, arguably? Not necessarily, just because those other counts just have a heightened burden that the State needed to show. And what is that heightened burden? I'm not understanding this. Unfortunately, I cannot recall the exact elements of the offense for the other counts. Well, the other counts, theft involves an intent to defraud, taking property without permission, taking money away from the village. And the other count, the official misconduct count, involves the same conduct while employed as a public official or public employee, deceiving his employer, the village. So if he didn't deceive the village by virtue of, or the State didn't prove deception in deceiving the village, how can he be guilty of false entries? Yes, there is the aspect of the intent to... Defraud? Yes, the intent to defraud. The reason why that this defendant is still guilty of the false entries is because the intent for false entries is not quite the same. The difference is that the intent of false entries is just meant for the purposes of receiving money for claiming work and not necessarily for the intent to steal that money from within the intent to defraud for the theft aspect and for an official misconduct. I have a question or two. Yes, sir. What document would require or at least establish grounds for the municipal corporation known as Highwood to pay the defendant? Most likely it's an employee contract to establish that as well. These are the time cards and an application relating to the manning of a fire station. Which one do you think the controller or the treasurer or human resources reviews to make payment to a firefighter? Do you think it's the timesheets or do you think it's the firehouse log? Most likely it would be the timesheets. Did the state ever establish that there was a timesheet or a timeslip or a time card that the defendant proffered that was false? I'm not sure if I understood your question. Did the state establish that the defendant submitted an inaccurate, fraudulent, false or any of those three adjectives or adverbs in order to get paid a salary or compensation? Yes, the state did establish that. Which time cards or time card was deemed fraudulent? It was multiple time cards because the time card was supposed to indicate, the defendant would write the time card to indicate when he worked, how many hours, to indicate how much he should be paid. However, the firehouse logs are also a record of indicating who's supposed to be at the station, which should reflect how many hours one should be paid for. So are they substantive evidence or are they impeaching evidence to establish that a time card was fraudulently submitted? It would be substantive evidence. Pardon? Substantive. And based upon the substantive evidence, what did it prove relative to a log entry versus a timesheet entry or time card that established that the time card was false? It showed that the times that the time card indicated that hours were worked, that there's no indication that this defendant was working those hours. What about the two hours on the weekend that Mr. Hamill mentioned that were located or referenced in the firehouse log but didn't have the defendant's name attached there to? Is that incriminating? Because if it was, then wouldn't anybody who asked for those two hours also be guilty of a felony? Because their names aren't listed in the entry. And if it was supposedly an entire department that was in attendance, I would think that at least one other person would have requested it, but his name or her name wasn't there. So weren't they guilty of a felony as well? I cannot say. We're not in charge of the property and other people other than the defendant. To your previous question, for those two hours that you're talking about, it was established that there were a few minor mistakes within the firehouse logs. For example, I believe there was one entry that indicated that Chief Lovejoy had worked over 1,000 hours, which was impossible. I don't know if you do it real fast, it's possible. That was a scribe's error for that particular report. We call it a fat finger error. Yeah. And then also the June 6, 2007 entry, there was a mistake there as well that the prosecutor mentioned at the trial court. What about the testimony of Scott Olson, Mr. Mowrey? That testimony, how did that support the state's case? Well, the defendant has not mentioned the fact that there are 175 entries on the non-redshift days. The defendant is supposed to be working on shift days. That was his assigned duty. But there are 175 entries where he said he was working on non-redshift days, but there's no indication he was working through the firehouse logs. The defendant had claimed that he was working on administrative duties. Testimony from Battalion Chief Olson indicated that those administrative duties is something that he was able to accomplish during his normal shift time. But he was not deputy chief when the chief was on vacation, so didn't the defendant have some additional duties that the other battalion chiefs did not have? On occasions, yes, but also Chief Lovejoy also testified that it was expected that his normal administrative duties should be accomplished during his normal shift time. Olson testified that oftentimes the defendant would not be there in the morning even though he was supposed to be there at the beginning of the shift, correct? Correct. But the defendant put in his time cards for full days for those days, correct? I believe so, correct, yes. Was the witness there to determine whether or not he stayed after hours? I don't believe so. Battalion Chief Olson testified to that. If you don't show up on time, then it means that you also, therefore, must be presumed to have not worked past the daytime termination. Seeing as the firehouse is expected that you arrive at your shift at the appropriate time to relieve the fellow firefighters that are on duty. But he had additional duties, so if he was doing additional duties, don't you think you'd have to establish that he left the firehouse at the end of the day shift and, therefore, wasn't entitled to the money? Well, the additional duties are only at certain times when Chief Lovejoy was gone and the defendant was acting as the chief. But that wasn't a continual extra duty. He just had his normal duties most of the time. That was only when Lovejoy was on vacation. Correct. One other question. Does the statute relating to fraudulent statements relate to merely an attempt or does it actually have to come to fruition? Unfortunately, I'm not quite sure as to that. I can do additional research. What I'm suggesting is, is the attempt to make the false statement or representation sufficient or does there have to be some success like getting paid more than you're entitled to in order to establish a fraudulent misrepresentation? In other words, does there have to be reliance by somebody on that fraudulent misrepresentation to complete the crime? I do believe that as long as an individual was intending to defraud someone, that is sufficient. Did the indictment indicate that he was charged with making fraudulent time cards or making fraudulent entries in a firehouse? Unfortunately, I don't recall the specific language used within the indictment itself. I have no further questions. Thank you, Mr. Chiu. The state has asked that you uphold the defense conviction and find that the defense counsel must not. I do have one other question. You did not address ineffective assistance of counsel. Would you agree that it's incumbent upon every lawyer to examine the evidence before you go to trial? Yes, I would suggest that before you go to trial. Thank you. One final point to make, that the defense counsel didn't provide their own expert witness in order to try to discredit the state's expert witness throughout the trial and heavily process the evidence of the state's expert witness. And so there is the state's opinion that the defense counsel was not ineffective. If her actions were not objectively reasonable, it did not affect the outcome as does the trial factor chance to determine the credibility of all the witnesses' statements and examine the evidence to determine guilt. And that's why the defendant was only found guilty of the false entries and was acquitted of the other offenses. And people ask that you find a degree from the guilty verdict and find that the defense counsel was not ineffective. Thank you all. First of all, I want to clear one thing up. Olson never testified. He testified that he would see that the defendant was not there when he arrived. He never testified that the defendant had claimed hours. No, he didn't do the cross-comparison. He just gave that general testimony. General testimony, he wasn't there on weekends. But the important thing is none of the allegations involve the defendant claiming a full shift and working less than a full shift. It's all, in fact, if you take out the five, there's five full shifts that he claimed that they say he didn't work at all. But that's the one he went to class. That's the one he worked the day before. The one that actually, there's one in June of 2007 where he worked, he actually shows up in the firehouse for 24 hours, which Huber still had him on the chart as being a discrepancy. And it's one where there was three firefighters on duty all day. So those are all gone. There's no, there's, every one that's left, the 20 that are not explained by the firehouse logs themselves, all about the defendant claiming some partial shift and doing things like training, which is consistent with doing things like training and equipment maintenance, which are the kinds of things that don't show up in the firehouse. Or at least they're certainly not the kind of thing to show up. You're saying they don't show up in the firehouse because they're not intended to show up in the firehouse? Well, you know, sometimes they do, sometimes they don't. And a big part of that, if you look, if you compare the August 2009 entries between exhibit number five and exhibit number six, what you will find is that an extra 200 entries that are in exhibit number six primarily relate to equipment maintenance and training. And a lot of them don't have the firefighters' names on them. But those are the kinds of entries that don't show up in department events, non-incident activities, which is what exhibits two through five are. So it's exactly the kinds of activities that you would expect not to show up. That's what the defendant was doing on these days. Does the record show how the defendant was charged or how this investigation began? Who started it? Who blew the whistle on him? The record doesn't show that. Something that was just brought to the state's attorney's office for an indictment? Or was he charged by complaint initially? The first thing in the record was an information. I don't know. Based on the record, I don't know how. Who blew the whistle. Right. Also, I want to bring up also non-redshift days. Because counsel brought them up in the opening. Non-redshift days simply can't count here. The testimony was that he worked all the time on non-redshift days. That was all three of the shift commander witnesses testified, that the defendant is only defending on non-redshift days all the time. If you look at Huber's analysis, she only did a small portion of the non-redshift days. It was 216 total. She shows him working cold firehouse logs 39 times on 216 days. That's where you get the 177 days he supposedly claimed hours and didn't work. Well, one of the points that the prosecutor made was that he was disgruntled when he was demoted and that he wanted to work 40-hour weeks. And so if he was using whatever system he designed to show up and fill in hours on non-redshift days, wouldn't that be, is that to confuse or to make it appear that he was only working on redshift days? Would that be a fraud on the village? Well, that's not what's happening. No, it's not what's alleged. It's not false entries either. Maybe that's what these other counts are getting at. He basically fashioned his own 40-hour week against Longjoy's wishes. And that's not a criminal matter. That's not a false entries matter. That's a department policy question. Right, right. And that probably is what's happening. He worked his 40-hour weeks to the extent that he could and took off on the weekends, but he didn't claim hours on those weekends when he took off. So it's not a false entry then. What about shift D? Yeah, good question. Everybody's shifting. You know, this goes back to not being payroll software. No, it's just not explained, right? I mean, you don't get one explanation from the testimony, and then you have something else appearing in the trial house logs. They contradict each other. You know, the state asks you to view it in the light most reasonable to them, but I don't even know what light that would be. I mean, which interpretation is more favorable to the state? And what really matters in that is that it contradicts each other, and it's probably because they didn't care, because it's not an important thing and it's not payroll software, so it really doesn't matter. At the end of the day, as far as they're concerned, they just need to show firefighters on duty. And you understand that in applying to Collin's standard, we don't know exactly what the trial court found, other than her statements that she examined all the evidence. Right. So we have to review all of the evidence to determine whether or not a fact finder could find the defendant guilty of one false entry, right? Well, of a series of false entries within 10, remember? Within 10 to defraud, no question. And that's what this is. There's one other thing I just want to get at real fast. You know, it's a five-year period. You reach out to Hubert's work and you take out the four dates that don't have time cards, and you're down to 16. 16 over five years. 609 redshifts. It's not a series of events. And it's all partial, all of them partial days, and all of them in this period of time where the firehouse records are incomplete. There's no way to find intent there. How is that? Plus, he's salaried for 12. 12 of these are during the time he's salaried. So what's the intent? How does this defraud the city of Highwood, even if they are false? But the fact of the matter is you really can't find it false because you can't do that with firehouse logs that are missing half their entries. So for those reasons, I would ask that you give our diversity commission outright, or alternatively, we're going to have to have a new trial. Thank you. The court thanks both parties for their arguments. A written decision will be issued in due course.